The Honorable Court, all rise. The Honorable, the United States Court of Appeals, the Court Circuit is now in session. All persons having any business before this Honorable Court may draw the arrear of their attendance until they are adjourned. God save the United States of America and this Honorable Court. Court is in session. You may be seated. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is No. 21-1602 and No. 21-2003, United States v. Barry J. Cadden. At this time, would counsel for Appellant Cadden, Attorney Michelle Peirce, please come up to the podium and introduce yourself to begin. Hi, just before you begin, Judge Selya is joining us by phone and Judge Selya, I just want to make sure you're able to hear us and we can hear you. I can hear you, Judge Bauer. Yeah, we can hear you fine. Okay, terrific. Please begin. Thank you, Your Honor. May it please the Court, my name is Michelle Peirce. I'm from the law firm of Hinkley Allen, arguing on behalf of Mr. Cadden. I would request, if Your Honor would be willing, a minute to reserve for potential rebuttal. That's fine. Thank you. As this Court is already aware, there was a decision in July on co-defendant Glenn Chin's case, so I do not intend to re-argue, as I am not permitted to, the issues decided there, but would instead like to focus on the two issues not in Mr. Chin's case. And likewise, time permitting, I would like to address the vulnerable victim enhancement, an argument that Mr. Chin did not put forward in his case. Before I do that, I want to sort of set the stage, which is at a high level, the sentencing below was rendered problematic by three main themes that led to the two primary reversible errors that I'm going to talk about. Those three major problems, and they're somewhat related, are the lack of description or explanation for some of the decisions below, the repeated statement by the district court that it lacked discretion, and number three, most problematic from our standpoint, the misstatement by the district court that it had to impose a harsher sentence, that this court had directed it to do so. The first error I want to turn to that I briefed is the disparate result of the sentences between Mr. Cadden and Mr. Chin. Counsel, did you raise the point that Chin's sentence should be a benchmark for Cadden's sentence in the district court? Your Honor, not explicitly, no. We didn't have that. Shouldn't we take this argument on point, Your Honor? Well, I think if you do, we still succeed, but I don't think that's the case, Your Honor, because number one, the court under 3553A6, that's an obligation of the court to ensure there are no unwarranted- Statement of the court to compare its sentence with the sentence of others? Yes, Your Honor, under A6, I believe the court is required to guard against unwarranted disparate sentences, and the court failed to do that here. Number two- All right, so do you have any authority for the proposition that you have a presumed claim of error for the argument that the court should have sentences in comparison to the sentences of a particular other individual when you never made that reference to the district court? Is there any case holding anything like that? I haven't cited to such a case, but I believe we did preserve that in arguing all of the 3553 factors, number one. Number two, the court having made the decision to sentence Mr. Chin on a second day separately did not allow us the opportunity to point out the disparate sentence. And number three, not specific answer to your question, but I think that the unwarranted disparate sentence survives a plain error challenge. I think the sentence fails under that as well. Do you want to say a sentence about why? I do, Your Honor. Number one, the district court in the Chin case did not explain why it varied so widely below the guideline. As this court is aware, the First Circuit is very explicit that when a court varies down or up, it's required to give increased explanation. In the Chin case, the court gave virtually no explanation, though did allude to Mr. Chin's allocution, but did not give explanation, let alone extensive explanation required about why that supported such a variance. More importantly, from Mr. Chin's perspective, pardon me, Mr. Cadden's perspective, the court offered nothing on the record at either sentencing of why there should be such a drastic re-review of their relative culpability between sentencing number one and sentencing number two. So in light of the utter lack of explanation for why an unwarranted disparity of this kind was merited, I believe it is plain error to have dramatically increased Mr. Cadden to a whopping five-and-a-half years more than Chin, and without explanation, increasing Chin by only two. Cadden had a different guideline, didn't he? He did, Your Honor. What? He did. For the two defendants? He did, and what I think is so unique about this case, a positive in my favor in the situation, is that it is the rare apples-to-apples comparison, not because Chin and Cadden are exactly comparable, which is often the struggle in the cases on these types of arguments, but rather because their relative culpability was already established in sentencing number one, where the district court determined their sentence was within a year of one another. By comparison, jumping ahead, those very same people, not the same culpability, but the same relative culpability were sentenced dramatically different at the resentencing, again, without any explanation. I wanted to turn now to the second. I just wanted to see if I could understand the contention. With respect to the disparity, the guidelines between Cadden and Chin are not the same. Guidelines calculation, correct? Correct, yes, Your Honor. So that does make it difficult under our precedent to show that it would be plain error if the focus is on the disparity between the two, but you seem to also be suggesting that, put Chin aside, is the concern that there's an unexplained increase in Cadden's sentence relative to sentence one? Because that would seem to be explained by the fact that in sentence two, he's applying enhancements that he didn't apply in one. I don't think it does explain it respectfully, Your Honor, because at the original sentencing, they likewise had very different guideline calculations. And so that sort of apples to apples moves forward. They also have very different calculations, not between them, but, you know, in the second sentence. What was Chin's sentence at two relative to Chin's sentence at one? The number of years, Your Honor? How much did it go up between one and two for Chin? It went up two-and-a-half years for Mr. Chin, and it went up five-and-a-half years for Mr. Cadden. Again, perhaps it could have been warranted had the court explained it, but the court did not, and that's the main problem here, Your Honor. Notably, the only difference in the sentencing ranges for each person was the leader organizer, so that was the only way that each of their sentencing guidelines varied. Isn't that a relatively significant one? It applied in both. In other words, I believe I have that correct. So, again, I don't believe, I think we have the benefit of the relative culpability having been established. Aside from disparity, what are the other arguments that still are available to you after our decision in Chin? The judge's sort of somewhat odd repeated statement that it lacked discretion below. It made this comment in dealing with the first enhancement, made the comment again with the second, and I think most troubling from Cadden's standpoint and why we think the sentence needs to be remanded or the case needs to be remanded is the court's, we believe, that this court told him to sentence Cadden at a higher rate, that he was too lenient. The court didn't just talk about the enhancements. When it made the statement, the court said explicitly, I recognize the court of appeals was of at least the implicit, if not explicit, view that my prior sentence was excessively lenient. I do not personally agree, but so it is with many of the things that I'm required to do as a judge. What if we thought that in context what he was saying was that the court of appeals thought, at least implicitly given the CF site, that he was too lenient because of his failure to sentence based on certain enhancements? I think this court, may I continue, Your Honor? This court explicitly told the judge in the 2020 ruling, we're not telling you that those apply. So I think in that context- But now after Chinn, we know they do. But at Cadden's sentencing, Chinn hadn't yet been sentenced. Right, but what I'm saying, if the correct legal state is that the enhancements do apply, then isn't that statement correct by the district court, that he's sentenced without applying enhancements, which was a mistake? I don't think it is. I think what the court said explicitly was the court said I was too lenient, and I disagree. Leniency is very different than the court said I miscalculated. This is the court said I was a little too light on them, and the court didn't say that. And for that reason, I believe that the district court should re-sentence Mr. Cadden. Judge Selya, anything further? No, Your Honor. Judge Howard. Thank you very much. Thank you. Thank you, Attorney Peirce. At this time, would Attorney Looney please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. Chris Looney, appearing on behalf of the United States. Could you just speak up a little bit louder? Yes. Chris Looney, appearing on behalf of the United States. Taking my cue from Ms. Peirce, I'm going to skip over the first two issues raised on appeal and start with the disparity argument raised by Mr. Cadden. What this court said is that for a disparity argument to succeed, a defendant must make an apples-to-apples comparison. In this case, they can't do that because Judge Stearns made explicit findings that Defendant Cadden and Defendant Chin were, in his words, not comparables. He did not view Mr. Cadden and Mr. Chin as comparables, and he supported that with explicit facts that distinguished them, that Mr. Cadden was the owner and operator of NECC. He had a financial incentive because of that status as an owner and operator, and Mr. Chin's Here's the puzzle, is you have two defendants that get sentenced at time one. There's a certain disparity in their sentences. Then at sentence two, the only thing that's changed is an enhancement that applies to each is now applied, and suddenly the disparity grows between the two. What makes that rational? What explains that? I think because they're not comparables, that rebutts this idea that they should be moved in lockstep. They have a different degree of culpability, responsibility, and so just the very notion that they should be moved lockstep. But why when the enhancement that applied to both, what would explain suddenly the increased divergence? Is there anything in the rest of the explanation that would give us insight into why when that happens, it would make sense to have Cadden's go up more than Chin's? In this case, there was a precise reason for it, and that is at Mr. Chin's sentencing, Mr. Chin spoke. He gave an allocution, and Judge Stearns credited that. He said that it showed genuine contrition and, importantly, genuinely self-reflection, and it showed his taking responsibility for what had occurred. And was this at sentencing two, the allocation? That was at sentencing two, and immediately after Judge Stearns made those statements in the record, which is at appendix page 260, Judge Stearns said, for those reasons, I'm going to vary below the guidelines. And then in Cadden's, is there a similar allocation or any comment about one? There was no allocation at all, so no opportunity for Judge Stearns to make a similar finding with respect to Cadden. So even if you accept the premise that they should have moved in lockstep in the way Mr. Cadden's argument suggests, absent some reason not to move in lockstep, Judge Stearns had that reason and credited that reason in imposing a lower sentence on Mr. Chin. Finally, to the extent that- Cadden had charges pending in another jurisdiction at the time of his sentencing? Yes, they both did as a matter of fact. They both appeared by Zoom because they were awaiting trial on secondary murder charges in the state of Michigan. So Chin had these charges pending as well, but he chose to allocute? That's correct. Okay. Yes. And then I'll just add, to the extent that there was not a sufficient explanation for the variance downward, if anything, that would be an argument that Mr. Chin's sentence was too lenient, not that Mr. Cadden's, which was within the guidelines, and so within the range of generally expected sentences for this type of conduct, that does not prove an unwarranted disparity in Mr. Cadden's favor. Turning to the other argument that Judge Stearns misapprehended his authority on remand to impose the sentence he thought was most appropriate, I think this argument really just overreads the statement by Judge Stearns and takes it out of context. The statement that Ms. Purse primarily relied on, that this Court of Appeals was of the implicit, if not explicit, view that the prior sentence was excessively lenient, that was made in the context of reciting several factors that led Judge Stearns to his final sentence. Those factors included the recalculated guidelines range, which were now significantly higher, Mr. Cadden's recognition of the horror of what had happened and the degree of his acceptance of responsibility, the lack of intentionality that Judge Stearns saw there, and then one factor was this Court's opinion on remand. And when this Court remanded it, it instructed him to reconsider the guidelines calculation and whether the reckless risk enhancement and vulnerable victim enhancement applied, and in doing so to look more broadly at the scope of Mr. Cadden's conduct to consider, when looking at the reckless risk enhancement, the full scope of his conduct and not only whether the offense itself was inherently risky. And then with the vulnerable victim enhancement, to consider all of the victims of his conduct, not only the victims themselves. Do you think that the district court understood itself to have the discretion to impose the same length of sentence imposed at sentence one if it determined that the enhancements that it had not applied at sentence one did apply? The instruction from this Court was to... That's not what I asked. Do you think from the district court's opinion as to why it imposed the sentence it did at sentence two that it thought it had the discretion to impose the same sentence in length that imposed at sentencing one if it determined at sentencing two that the enhancements that it had not applied in sentence one did apply? If Mr. Cadden was facing a significantly higher guidelines range, could it impose... Does the district court understand it had the discretion after our decision to impose the same length of sentence as it had imposed at sentencing one? I don't think on plain error the record shows that he did not have discretion. With Mr. Chin it shows that he very significantly below. Clearly Judge Stearns in recalculating the guidelines took the view that the sentence that he had previously imposed that was at the high end of the old guidelines was now far below the newly calculated guidelines and so a drastic downward variance. So perhaps I think it's fair to read this statement as saying that I don't view this drastic variance below the new guidelines to be appropriate. No, but there's a key question there. That's fine if that's what the district court said. And then you could appeal and say he was wrong in thinking that or whatever. But the concern is that what the district court thought is that whether or not I think it would be appropriate to do that, I don't have that discretion given what the court of appeals thinks. How would I know which of those two things was in the mind of the district court given what the district court said at sentencing? I think it's reading that statement it is fair to conclude that he believed he should increase the sentence from where it was previously. Yes, but the question is why did he think that? Did he think that because the court of appeals was telling him he had to if he applied the enhancements? Or did the district court think that he should increase it because if those enhancements applied it was an appropriate exercise of discretion to increase it? Reading it, I want to read it as fairly as possible. He said that the court was of the implicit view it was too lenient, which I do think he took to understand with the enhancements applied the sentence should increase. And so isn't that wrong? Because we didn't say that. Well, he didn't explain it explicitly. He doesn't take it as explicit. I don't think we implicitly said it. Well, but the practical implication of the opinion was that first Judge Stearns should take a broader view of the conduct. Considering the reckless risk enhancement, he should look at the overall recklessness, not just whether it's an offense. But there's nothing in the opinion that suggests what he should do as an exercise of discretion once he does a proper guidelines calculation. No. What this court said was that he should consider the party's updated arguments what the sentence should be. Yeah. But you just suggested that what the district court thought was that in addition, we had suggested that once he does that, he then can't impose a sentence as lenient as he had previously opposed. I don't think there's anything in the record that makes that clear. But is there anything in the record that makes it clear that's not what he thought? Because if there's a concern about that, then shouldn't he be sentenced once the district court is clear as to the scope of discretion he had to impose the sentence he's entitled to impose? I think, well, I would say that I think this is an unpreserved claim of error. And so it would be on clear error of view. And so I don't see that even if it's there are two potential interpretations, one that supports the government, then on clear error of view, we should still prevail because it's not a clear error at all. But I think the reading. So there was no objection made below to the district court after the district court made that statement? I don't believe there was. But I think that the fairest reading. So we do know, counsel, that the district court must have known that despite the court appeal's opinion, it has the right to vary down to it because that's exactly what it did in the Jay case. It chose to impose a within-guidelines sentence on Kevin. Doesn't that suggest that the court realized it had to be some discretion? It certainly does. At Mr. Kevin's sentencing, this same dynamic was there of a much higher guidelines range. There's nothing in Chin's sentencing that contains a statement like is present in Katton's second sentencing about the court of appeals having cast doubt on his authority to impose such a lenient sentence as was imposed on Katton, right? Or is that wrong? The first quotation cited in Mr. Katton's brief pertains to, supposedly supports a lack of discretion in Chin's case that mirrors that in Mr. Katton's case, that one of the statements cited in Katton's brief is from Mr. Chin's sentencing hearing. Is that the one about leniency? Not explicitly about leniency. That statement, the statement that Ms. Burse focused on this morning, that comes from Katton's sentencing, right, not Chin's? The first one, the quote from Mr. Chin's hearing is that the First Circuit has made it clear that whatever it may have thought about the justice of the original sentence, under their formula, the sentence imposed was too lenient. So he did make a similar statement that this court's opinion suggested he had been too lenient and then did emphasize discretion there to vary below the guidelines. Anything further, Judge Selya? No. Judge Howard? Thank you, Your Honor. Thank you. Thank you. At this time, if Attorney Burse would please reintroduce herself on the record to begin. Michelle Burse on behalf of Mr. Katton once again. Very briefly, to the point that was made at the end there, that a similar statement was made about the lack of discretion in Chin's sentencing, I agree and I think it emphasizes, it was in both, it emphasizes that the judge in both thought he lacked that discretion. And while he did vary downward, he increased both. He didn't say, he didn't stick to his guns and say the sentence I imposed originally was appropriate because he didn't think he could do that anymore. I don't know why he thought that, but that's what he said, and I don't think we can second guess, try to guess what he meant. He said what he meant. That's all I had to say other than I did want to make clear I'm not waiving the other arguments in our brief by not arguing it. I'm trying to respect the court and its precedent. Thank you. Thank you for your consideration.